UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

**AMERISOURCE CORP.**              **CIVIL ACTION  NO.  02-0046**

**VERSUS**                          **JUDGE ROBERT G. JAMES**

**PROFESSIONAL PHARMACY SERVICES, ET AL.**   **MAG. JUDGE JAMES D. KIRK**

RULING

Pending before the Court are a motion and supplemental motion for criminal contempt [Doc. Nos. 130 & 134]  filed by Plaintiff Amerisource Corp. ("Amerisource") against Defendant Timothy Theron Jacks ("Jacks").

**I.     Procedural History and Relief Sought**

This case has a long history with the Court.  After more than four years on this Court's docket, a bench trial was held on July 17, 2006.  On July 28, 2006, the Court issued a Judgment and permanent injunction in favor of Amerisource and against Professional Pharmacy Services ("PPS").  On August 7, 2006, the Court issued a Judgment and permanent injunction in favor of Amerisource and against Jacks.[1]  On August 23, 2006, the Court appointed Barry Dopson ("Dopson") as the permanent receiver for PPS.

On August 29, 2006, Amerisource filed an emergency Motion for Contempt ("First Contempt Motion") [Doc. No. 125], on the basis that Jacks had violated the Court's July 28, 2006 Judgment and permanent injunction; August 7, 2006 Judgment and permanent injunction;

---

[1]PPS was not represented at trial, and the Court ruled in favor of Amerisource based on the evidence previously submitted.  Jacks, however, represented himself pro se.

August 23, 2006 order appointing Dopson permanent receiver; and April 3, 2006 preliminary injunction (in effect until it was replaced by the July 28, 2006 permanent injunction) [Doc. No. 104]. Amerisource contended that since June 5, 2006, Jacks had taken $64,000 from PPS by improperly paying himself through payroll checks and by using PPS funds to pay his personal credit cards.

The same day, August 29, 2006, the Court held a telephone evidentiary hearing on Amerisource's First Contempt Motion. At the hearing, Jacks asserted that the payments made to him and to his credit card companies were reimbursement for personal loans he made and expenses he incurred on behalf of PPS. After hearing argument from both parties and testimony from Jacks and Dopson, the Court found Jacks in contempt of the preliminary injunction issued on April 3, 2006 [Doc. No. 104] and the permanent injunction issued on July 28, 2006 [Doc. No. 119].[2] The Court ordered Amerisource to submit a proposed judgment.

On August 30, 2006, the Court entered an order requiring Jacks to return the $64,000 to Dopson immediately. The Court also explained to Jacks that he can make a claim for personal loans to PPS and for expenses he has incurred on behalf of the corporation, but he cannot have the corporation reimburse him without proper authority.

On September 12, 2006, Amerisource filed its motion to have Jacks found in criminal contempt ("Second Contempt Motion") [Doc. No. 130]. Amerisource argues that Jacks is in

---

[2]Although the April 3, 2006 preliminary injunction and the July 28, 2006 permanent injunction were entered against PPS, they were also applicable to Jacks as an officer and shareholder of PPS. *See* [Doc. No. 104] (Preliminarily enjoining PPS and "its directors, officers, agents, and shareholders . . . from disposing of any property of or changing the status or the affairs of [PPS] . . . pending . . . trial.); [Doc. No. 119] (Converting the preliminary injunction to a permanent injunction).

"criminal contempt of the Court's August 30, 2006 Order of Contempt" because he has failed to pay Dopson the $64,000, as ordered. [Doc. No. 130, p. 1]. According to Dopson's affidavit, Jacks stated to Dopson that he will never repay the $64,000 and that he is preparing to leave Louisiana in an effort to avoid repaying this debt, among others. [Doc. No. 130, Exh. A].

In the relief sought in its Second Contempt Motion, Amerisource asks the Court for reimbursement for $7,007.50 in attorney's fees associated with filing the First and Second Contempt Motions.[3] Amerisource further requests such "other and further relief as is just." [Doc. No. 130, p. 6].

However, the relief sought by Amerisource in its Second Contempt Motion is a civil, not a criminal, contempt remedy. Accordingly, the Court issued a minute entry on October 2, 2006, requiring Amerisource to supplement its motion if it wished to pursue criminal contempt penalties.

On October 5, 2006, Amerisource responded by filing a supplemental motion for criminal contempt ("Supplemental Motion") [Doc. No. 134], specifying the conduct by Jacks that it deemed to be in criminal contempt of the Court's order. Amerisource further requested that the Court appoint a neutral prosecutor and then order a fine and/or a term of imprisonment for Jacks.

On October 12, 2006, Jacks filed a response to Amerisource's Second Contempt Motion [Doc. No. 137]. Jacks states that he told Dopson that he did not have the funds to re-pay the $64,000, nor could he borrow the money. Jacks additionally states that he has no intention of fleeing Louisiana and that this fact can be confirmed with the Louisiana Board of Pharmacists

---

[3] Amerisource stated in its First Contempt Motion that it wished to recover attorney's fees for having had to bring the motion. However, in the proposed judgment, Amerisource did not mention attorney's fees.

because he has not applied to transfer his license.

On October 13, 2006, the Court referred this matter to the United States Attorney to determine whether prosecution for criminal contempt is appropriate.[4]

On January 22, 2007, Joe Jarzabek, Chief of the Criminal Division of the United States Attorney's Office, notified the Court that the United States Attorney does not "believe that criminal prosecution of this matter would be productive."  [Doc. No. 144].

On February 22, 2007, the Court conducted a telephone status conference with Jacks and attorneys for Amerisource, Todd Ewan and Michael Walshe.  Despite the United States Attorney's recommendation, Ewan indicated in the conference that Amerisource wishes for the Court to act on its Second Contempt Motion and Supplemental Motion.

**II.    Law and Analysis**

A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.  *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995).  Contempt is committed only if a person violated a court order requiring in specific and definite language that a person do or refrain from doing an act.  *Martin v. Trinity Industries, Inc.*, 959 F.2d 45, 47 (5th Cir. 1992).

There are two types of contempt: criminal and civil.  The Fifth Circuit has explained the

---

[4]While the Court has the authority to refer a matter to the United States Attorney for prosecution, the Court requested only that the United States Attorney conduct an investigation as to whether prosecution is appropriate.

difference between civil and criminal contempt[5] and the effect on a party's due process rights as follows:

> [T]he initial touchstone for determining the due process rights of a sanctions defendant lies in the characterization of the particular contempt as either "civil" or "criminal":
>
> Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required. To the extent that such contempts take on a punitive character, however, and are not justified by other considerations central to the contempt power, criminal procedural protections may be in order.
>
> *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *see also Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) (in a contempt action, as in any other, "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings").
>
> As the Supreme Court has also made clear, "conclusions about the civil or criminal nature of a contempt sanction are properly drawn . . . 'from an examination of the character of the relief itself.'" *Bagwell*, 512 U.S. at 828, 114 S.Ct. 2552 (quoting *Hicks,* 485 U.S. at 635, 108 S.Ct. 1423).

*Crowe v. Smith*, 151 F.3d 217, 226-227 (5th Cir. 1998).

A conviction for criminal contempt is authorized under 18 U.S.C. § 401(3)[6] upon proof beyond a reasonable doubt of (1) a reasonably specific order; (2) violation of the order; and (3)

---

[5]In this case, the Court is faced only with allegations of indirect contempt that has occurred outside the Court's presence. Direct contempts that occur in the court's presence may be immediately adjudged and sanctioned summarily, *see, e.g., Ex parte Terry*, 128 U.S. 289 (1888), and, except for serious criminal contempts in which a jury trial is required, *Bloom v. Illinois*, 391 U.S. 194, 209-210 (1968), the traditional distinction between civil and criminal contempt proceedings does not apply. *Cf. United States v. Wilson*, 421 U.S. 309, 316 (1975).

[6]A "court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command. 18 U.S.C. § 401(3).

the willful intent to violate the order. *United States v. Landerman*, 109 F.3d 1053, 1068 (5th Cir.), modified in part on other grounds, 116 F.3d 119 (5th Cir. 1997).

Pursuant to Federal Rule of Criminal Procedure 42(a), to initiate a criminal contempt proceeding the Court must request that the United States Attorney prosecute the alleged contemptor. If the United States Attorney declines the prosecution, the Court may appoint a neutral prosecutor. Fed. R. Crim. P. 42(b)(2); *see also Young v. United States*, 481 U.S. 787, 800-801 (1987) (The "fundamental purpose [of criminal contempt proceedings] is to preserve respect for the judicial system itself. As a result, courts have long had, and must continue to have, the authority to appoint private attorneys to initiate such proceedings when the need arises."). The Court's exercise of its authority to refer a matter for criminal contempt prosecution, whether by United States Attorney or neutral prosecutor, is restrained by the principle that "only '[t]he least possible power adequate to the end proposed' should be used in contempt cases." *United States v. Wilson*, 421 U.S. 309, 319 (1975) (quoting *Anderson v. Dunn*, 19 U.S. 204 (6 Wheat.), at 231, 5 L.Ed. 242 (1900)); *see also United States v. Time*, 21 F.3d 635, 640 (5th Cir. 1994) (same).

In this case, however, the Court concludes that criminal prosecution of Jacks is inappropriate and declines to refer the matter to a neutral prosecutor.[7] Although the evidence shows that there was a specific order (for Jacks to re-pay $64,000 to Dopson) and a violation of that order (Jack's failure to re-pay the $64,000), the Court finds that there is insufficient evidence of the third requirement, that Jacks <u>willfully intended</u> to violate the order.

---

[7]Rule 42(b) requires the Court to first refer the matter to a United States Attorney for prosecution, but it would be a needless waste of time, given the United States Attorney's recommendation to the Court.

Amerisource has presented only alleged statements made by Jacks to Dopson, statements which Jacks denies. Amerisource has not presented any evidence of Jacks' financial condition and whether he has the ability to re-pay the $64,000. A large portion of the amount owed was paid to Jacks' credit card companies, and Jacks cannot get his money back from these companies to pay Amerisource. The Court has been fully aware of Jacks' precarious financial condition since prior to trial. In fact, on March 31, 2006, the Court granted the motion of Jacks' attorney, Rex Rainach, to withdraw from representation because Jacks could not pay him.

Additionally, as noted, the United States Attorney, which has far more experience with the prosecution of criminal contempt than this Court, determined that prosecution was not appropriate.

Given the Court's familiarity with this case, the parties, and the evidence, the Court finds that there is insufficient evidence to show beyond a reasonable doubt that Jacks willfully intended to violate the Court's August 30, 2006 Contempt Order. Therefore, it would be an inappropriate use of judicial resources to refer the case for prosecution.

### III. Conclusion

For the foregoing reasons, Amerisource's Second and Supplemental Contempt Motions [Doc. Nos. 130 & 134] are DENIED.

MONROE, LOUISIANA, this 6th day of March, 2007.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE